**Hyman L. MILLER, Appellant,**

**v.**

**PURITAN FASHIONS CORPORATION,**
**d/b/a Barnsville, Appellee.**

**No. 5382.**

Court of Civil Appeals of Texas,
Waco.

Nov. 7, 1974.

Rehearing Denied Dec. 5, 1974.

Berman, Fichtner & Mitchell, Douglas E. Yeager, Dallas, for appellant.

Stroud & Smith, L. Vance Stanton and Richard D. Pullman, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a suit on an employment contract containing provisions for arbitration. On or about August 10, 1972, Plaintiff-Appellant Hyman L. Miller, a resident of Dallas County, Texas, entered into a written contract with Defendant-Appellee Puritan Fashions Corporation, a foreign Corporation headquartered in New York, New York, by which Defendant Puritan employed Plaintiff Miller as a salesman for the sale of merchandise in the States of Texas, New Mexico, Oklahoma, Louisiana, and Mississippi. The term of the contract was twelve months from the date of the contract, with the provision that it would be automatically renewed from year to year unless terminated as provided for in the agreement. Either party could terminate the agreement by giving written notice of intention to terminate to the other party at least sixty days before the end of the employment term, with the effective date of termination being specified as the "end of the twelve month employment term in which said notice is given."

The contract contained detailed provisions concerning the rights and liabilities of each party thereto, and ended with paragraph 14 providing for arbitration in the following language:

"14. The parties hereto agree to arbitrate in the City of New York any dispute arising out of any of the terms and provisions of this agreement. The parties may refer such dispute to the National Association of Women's and Children's Apparel Salesmen, Inc., for arbitration under procedures, established by the Association. If this is not mutually agreeable to both parties, they may refer such dispute to an arbitrator mutually agreeable to both parties. If both parties cannot agree upon one arbitrator, then each party shall appoint one arbitrator and the two arbitrators so selected shall select a third person to compose a panel of three arbitrators, who shall hear and determine the dispute, the cost of such arbitration hearing to be borne equally by both parties. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

The parties had performed under the contract for about five months, whereupon in January 1973, the Defendant's sales manager advised Plaintiff Miller that Defendant wanted to "break the contract" with Miller. No reason was given for Defendant's desire to break the contract.

Again, in April 1973, Defendant's sales manager advised Plaintiff Miller that Defendant Puritan wanted "to sever relations" with Plaintiff. To this Plaintiff

Miller replied that he would be glad to discuss settlement of the matter. The sales manager said, "Well, they (Puritan) don't feel as though they owe you a penny." In response to this conversation, Plaintiff Miller caused his attorney to write Puritan on April 6, 1973, inquiring whether Defendant Puritan desired to negotiate a termination of the agreement prior to the end of its one-year term. At that time the contract had at least four months to run before the expiration of the one-year term on August 9, 1973.

On April 12, 1973, Puritan's president answered Plaintiff's attorney's letter by writing Plaintiff a registered letter, the body of which letter is as follows:

"We hereby terminate your employment effective April 12, 1973 for cause, inasmuch as you have breached our agreement of August 10, 1972."

Upon receipt of this letter, Plaintiff Miller contacted Puritan's sales manager by telephone and asked "if there was anything that I had done to warrant such a letter." The sales manager replied, "not to my knowledge." The record does not show any reasons given for Defendant's firing of Plaintiff.

On April 27, 1973, Plaintiff Miller filed this suit against Defendant Puritan for breach of contract, praying for $14,450.00 commissions, $1,500.00 marketing expenses, and $5000.00 attorneys' fees. Defendant was served with citation under the provisions of Article 2031b, Vernon's Ann. Texas Civil Statutes.

Defendant challenged the jurisdiction of the trial court with a motion to the jurisdiction, making a special appearance under Rule 120a, Texas Rules of Civil Procedure, which motion the trial court after hearing overruled by an order entered August 23, 1973.

Thereafter, on September 4, 1973, Defendant Puritan filed a general denial.

On September 4, 1973, Defendant's attorneys wrote a letter to Plaintiff Miller demanding that the dispute be submitted to arbitration; and on September 21, 1973, Defendant Puritan filed its "Motion to Dismiss, or in the alternative, Plea in Abatement," praying that the cause be stayed and abated pending arbitration pursuant to the contract.

The trial court by order dated January 17, 1974, sustained the plea in abatement and ordered the parties to proceed to arbitration on or before April 1, 1974, with the further provision that if the parties failed to commence arbitration on or before April 1, 1974, that Plaintiff's cause of action would be dismissed.

On March 7, 1974, Plaintiff filed his "Motion for Final Order," alleging that "Plaintiff does not desire to commence arbitration in this matter as required by the Court," and prayed for dismissal of his cause of action in order to allow him to "appeal the order of the court." The Defendant filed its "Motion in Opposition to Plaintiff's Motion for Final Order," asserting that the "parties have proceeded to arbitration pursuant to order of this Court," and prayed for denial of Plaintiff's motion to dismiss.

The trial court after hearing upon the two last-named motions, dismissed Plaintiff's cause of action without prejudice, from which order Plaintiff Miller appeals.

The trial court made findings of fact and conclusions of law, the pertinent portions of which are as follows:

"Defendant's only activity in this Court, prior to its demand for arbitration on September 4, 1974, was the obtaining of an agreement to extend the time to reply to Plaintiff's Original Petition, the filing of its Motion to the Jurisdiction Pursuant to Special Appearance Under Rule 120a, and the participation at the hearing held on its Special Appearance.

"Plaintiff sold goods for Defendant, which were shipped from Massachusetts,

in the States of Texas, Louisiana, Oklahoma, Arkansas and Mississippi.

"Defendant has not invoked the power of this Court affirmatively in a suit or counterclaim of its own.

"Defendant has not utilized discovery procedures herein.

"The above numbered and entitled cause covers a conflict pursuant to an alleged breach of the Memorandum of Agreement entered into between Plaintiff and Defendant on or about August 10, 1972.

"On January 17, 1974, the Court ordered this cause abated and the parties to proceed to arbitration on or before April 1, 1974.

"Plaintiff, by Motion for Final Order, dated March 7, 1974, stated that he "does not desire to commence arbitration," and moved for order of dismissal.

"Defendant's New York counsel advised counsel for Plaintiff, by letter dated March 14, 1974, that Defendant was prepared to fully comply with the Court's order of January 17, 1974, to proceed to arbitration by any of the three methods provided by paragraph 14 of the Memorandum of Agreement dated August 10, 1972, and specifically advised Plaintiff of its choices under the terms of paragraph 14.

"The cause was dismissed without prejudice on March 29, 1974, over Defendant's Motion in Opposition filed March 20, 1974, which alleged that Defendant had initiated procedures to comply with the Court's order of January 17, 1974.

## CONCLUSIONS OF LAW

"This dispute is governed by paragraph 14 of the Memorandum of Agreement entered into by the parties on or about August 10, 1972.

"The contract in issue involves interstate commerce.

"Defendant's actions did not indicate any intention to waive its rights to have the dispute admitted to arbitration, nor was any of Defendant's conduct inconsistent with an intent to insist upon arbitration.

"Defendant's actions prior to its demand for arbitration on September 4, 1973, were necessitated by the Texas Rules of Civil Procedure in response to Plaintiff's initiation of this litigation.

"Defendant's actions have not caused unnecessary delay.

"This cause is governed by the Federal Arbitration Act, 9 U.S.C.A. Sections 1–14."

Plaintiff-Appellant Miller asserts the trial court erred in dismissing his suit pursuant to the order sustaining Defendant's plea in abatement for the following stated reasons: (1) that Plaintiff's cause of action did not state any issues arbitrable under the arbitration provision of the contract; (2) that as a matter of law Defendant is precluded from asserting the arbitration provision of the contract by reason of Defendant's repudiation of the contract; and (3) that Defendant waived any alleged right to arbitration. We overrule these contentions.

In effect, Plaintiff-Appellant contends that Defendant Puritan's acts and conduct constitute an anticipatory breach of the contract and a repudiation of said contract, and that Plaintiff's cause of action arises out of same. We agree that the Defendant's acts and conduct leading up to the filing of this suit constitute an anticipatory breach and repudiation of the contract. If the Texas law applied in the case at bar, because of such anticipatory breach the Plaintiff would be relieved of any obligations imposed upon him by the contract. It has long been the law in Texas that when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not

required to further regard the obligations imposed upon him thereby. Pollack v. Pollack (Texas Comm.App.1931) 39 S.W. 2d 853, opinion approved by the Supreme Court, plaintiff in error's second motion for rehearing overruled in 46 S.W.2d 292; Williams v. Shamrock Oil & Gas Co. (Tex.Comm.App.1936) 128 Tex. 146, 95 S. W.2d 1292, opinion adopted by the Supreme Court, Universal Life and Accident Ins. Co. v. Sanders (Tex.Comm.App.1937) 129 Tex. 344, 102 S.W.2d 405, opinion adopted by the Supreme Court; Ashton v. Bennett (Waco Tex.Civ.App.1973) 503 S. W.2d 392, error refused NRE.

■ However, in the case at bar, the Texas law does not apply. This contract involves interstate commerce, wherein the Texas Plaintiff sold goods for a foreign corporation headquartered in New York, which goods were shipped from Massachusetts and were sold by Plaintiff in Texas, Louisiana, Oklahoma, Arkansas and Mississippi. This contract falls squarely within the terms of, and is governed by the Federal Arbitration Act, 9 U.S.C.A., Sections 1–14. See Prima Paint Corp. v. Flood and Conklin Mfg. Co. (U.S.Sup.Ct. 1967) 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed. 1270. Section 1 of said Act defines "commerce", as used therein, to mean "commerce among the several states ———." Section 2 of that Act provides:

■ "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, *or the refusal to perform the whole or any part thereof,* . . . shall be valid, irrevocable, and enforceable . . . ." (emphasis supplied). Section 3 provides for a proceeding in any of the courts of the United States which may be had upon application of one of the parties to stay the trial of the action "until such arbitration has been had in accordance with the terms of the agreement." The Federal Arbitration Act has been held to be substantive rather than procedural, and equally applicable in state and federal courts. Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc. (2nd Cir. 1959) 271 F.2d 402, certiorari granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S. Ct. 27, 5 L.Ed.2d 37 (1960). Also see Mamlin v. Susan Thomas, Inc. (Dallas Tex.Civ.App.1973) 490 S.W.2d 634, no writ history.

■ The Federal Courts have held that the agreement to arbitrate is separable from the entire contract as a whole, and that Section 2 of the Federal Arbitration Act makes "valid, irrevocable, and enforceable" a written provision in any contract involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. In other words, by this doctrine the court has the duty to determine the validity of an arbitration clause separately from the validity or invalidity of the main contract. Prima Paint Corp. v. Flood & Conklin Mfg. Co. (U.S.Sup.Ct.) supra; Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc. (2nd Cir.) supra; Collins Radio Co. v. Ex-Cell-O Corp. (8th Cir. 1972) 467 F.2d 995.

Our United States Supreme Court has laid down the following rule of construction to be made in interpreting arbitration provisions in contracts:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steel Workers of America v. Warrior and Gulf Navigation Co. (U.S.Sup.Ct.1960) 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

■ In the case at bar, there has been no attack made upon the validity of the arbitration portion of the contract as such; therefore it is "valid, irrevocable, and enforceable" under Section 2 of the Federal

Arbitration Act, in spite of the attacks made upon the contract as a whole. The matters in controversy would and must of necessity "arise out of the terms and provisions" of the contract. The Plaintiff is suing for commissions and marketing expenses; whereas, the Defendant contends that it owes no liability to Plaintiff. Therefore the trial court acted properly in ordering the parties to proceed to arbitration.

 Plaintiff-Appellant by his third point contends that the Defendant-Appellee by its acts and conduct waived its right to arbitration. We overrule this contention. We have already outlined the sequence of events which include the acts and conduct of the Defendant. Suffice it to say that after suit was filed, the Defendant engaged in no acts or conduct inconsistent with its asserted right to arbitration. If this case were governed by the Texas law of anticipatory breach, as hereinabove recited, Plaintiff would be relieved of any obligations under the contract, including any duty to arbitrate. However, since this case is governed by the Federal Arbitration Act, there is nothing in the record to show that Defendant-Appellee waived its right to arbitration. The trial court has specifically found that the Defendant did not waive its right to arbitration, and found other facts as well which support the finding of no waiver. The record amply supports such finding of no waiver. A trial court's findings of fact will be upheld unless they are manifestly erroneous, and they will be overruled only when they are without any evidence of probative force to support them or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong. See Keeton v. Gillam Soap Works (Amarillo Tex.Civ.App.1948) 215 S.W.2d 675, error refused NRE; Cortez v. Cortez (San Antonio Tex.Civ.App.1970) 457 S.W.2d 131, no writ history, and the cases therein cited.

During oral argument on this case, counsel for Appellant and Appellee stated in open court that in the event this court held that the trial court acted properly in submitting this case to arbitration, then and in such event they would join in a motion to reverse and remand the cause, to enable the trial court to once more abate Appellant's suit until arbitration has been had in accordance with the terms of the contract. We hold that the trial court did properly order the case to arbitration; therefore we accordingly reverse and remand the cause for such purpose.

Reversed and remanded.